**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DAVID CARSON** | : | **CIVIL ACTION** |
| *Petitioner* | : | |
| | : | **NO. 15-3268** |
| | : | |
| **v.** | : | |
| | : | |
| **VINCENT MOONEY,** *et al.* | : | |
| *Respondents* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                 JUNE 19, 2018

# MEMORANDUM OPINION

## INTRODUCTION

Petitioner David Carson ("Petitioner"), a Pennsylvania state prisoner, filed a *pro se* petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, in which he asserted numerous constitutional claims. [ECF 1]. Thereafter, Petitioner obtained counsel, [ECF 2], who filed a memorandum of law in support of Petitioner's *habeas* petition and expanded on the alleged constitutional violations, arguing that (1) the trial court improperly denied Petitioner's motion to suppress evidence; (2) the evidence of record was insufficient to convict Petitioner; (3) trial counsel was ineffective for failing to object to the trial court's improper reliance upon the "demeanor" of the prosecution witness; (4) Petitioner's right to a speedy trial was violated; and (5) trial counsel was ineffective for failing to assert that Petitioner's speedy trial right. [ECF 14].

In accordance with 28 U.S.C § 636(b) and Local Civil Rule 72.1.IV(c), the petition for a writ of *habeas corpus* was randomly referred to United States Magistrate Judge Timothy R. Rice (the "Magistrate Judge") for a *Report and Recommendation* ("R&R"). [ECF 5]. On April 25, 2017, the Magistrate Judge issued an R&R, which recommended that the *habeas* petition be denied. [ECF 25]. Petitioner filed objections to the R&R, [ECF 28], and Respondents filed a

reply to the objections. [ECF 30]. This matter is ripe for a *de novo* review and determination of the objections posed.

After a thorough and independent *de novo* review of the state court record and court filings, for the reasons set forth, Petitioner's objections are overruled, the R&R is approved and adopted, the petition for a writ of *habeas corpus* is denied; and this Court finds no probable cause to issue a certificate of appealability.

## BACKGROUND

On December 17, 2003, Petitioner was found guilty in a bench trial of murder in the second degree, robbery, criminal conspiracy, and possession of an instrument of a crime and was, subsequently, sentenced to life imprisonment. *Commonwealth v. Carson*, 2014 WL 10888317, at *1 (Pa. Super. Ct. Aug. 27, 2014). The facts underlying Petitioner's conviction, as summarized by the Pennsylvania Superior Court, were considered by the Magistrate Judge and are as follow:

> [O]n July 15, 1998, [Petitioner] conspired with Julius Edwards to rob 18 [-]year-old [Romie] Webb. Several witnesses observed Edwards in possession of an AK47 assault rifle earlier that day. Edwards took the weapon to [Petitioner's] residence in the 900 block of Price Street in Philadelphia sometime in the afternoon. He and [Petitioner] then sat on the porch together for most of the afternoon and evening.
>
> Webb lived on the 800 block of Price Street and was selling drugs on the same corner where [Petitioner] used to sell drugs before getting locked up. People in the area knew that Webb kept the crack cocaine he sold in a prescription pill bottle[,] which he stashed under the bumper of a parked car. At approximately [10]:25 p.m., [Petitioner] and Edwards went . . . to where Webb was selling drugs. Edwards, wearing a striped shirt and armed with the AK47, ordered Webb to give him money. Webb responded that he had no money on him, and handed him the pill bottle containing the drugs. As Edwards was about to leave, [Petitioner] came around the corner and shot Webb four times in the back. Webb died later that night from gunshot wounds.

> After shooting Webb, [Petitioner] ran back into an alley where he took off the blue Nautica sweatshirt he was wearing and spoke briefly with his brother, Aaron Carson. [Petitioner] then returned to the corner and leaned over Webb, saying that he was going to be all right. When police arrived, [Petitioner] was instructed to move away. Approximately thirty minutes after the shooting, [Petitioner] and Edwards were back on [Petitioner's] porch. The blue Nautica sweatshirt was on the ground next to [Petitioner's] feet, the victim's pill bottle was in [Petitioner's] pants pocket and the AK47 that Edwards was carrying was leaning against the rear of an adjoining property.

*Id.* The facts adduced at trial stemmed from the testimony of several eye witness to the shooting, one of whom identified Petitioner as the shooter during Julius Edwards' trial in 1999, but who later testified during Petitioner's 2003 trial that she never actually saw the shooter's face. (R&R at 3). Another witness also identified Petitioner, during Julius Edwards' trial, as being with Mr. Edwards at the shooting, but later said at Petitioner's trial that she was unsure if it was Petitioner. (Id. at 4).

The procedural history of this matter is set forth in the R&R, and will only be repeated when relevant to address Petitioner's objections. Of note, prior to trial, Petitioner filed a motion to suppress the evidence discovered by the police at the time of his arrest, primarily the victim's pill bottle found in Petitioner's pocket. The trial court conducted a two-day evidentiary hearing, and denied Petitioner's motion to suppress. A bench trial was held, and following his conviction, Petitioner filed a motion for extraordinary relief and argued that the verdict was contrary to the physical evidence, including the time records from his ankle monitor, which included evidence that showed that he was confined at home at the time of the crime due to his house arrest. The trial court also conducted a hearing on this issue and, on January 11, 2005, denied Petitioner's motion and sentenced him to life imprisonment. *Id.* Petitioner appealed his conviction and

sentence.  On May 7, 2007, the conviction and sentence were affirmed by the Superior Court.
On December 5, 2007, the Pennsylvania Supreme Court denied review.

On November 3, 2008, Petitioner filed a counseled PCRA petition.  The PCRA Court
conducted an evidentiary hearing, and on March 15, 2013, Petitioner's PCRA petition was
denied.  Petitioner appealed seeking review of, *inter alia*, his speedy trial and sufficiency of the
evidence claims.  On August 27, 2014, the Superior Court affirmed the PCRA Court's decision,
and on February 19, 2015, the Pennsylvania Supreme Court denied review.  Plaintiff, proceeding
*pro se*, timely filed this *habeas* petition on June 10, 2015.

**LEGAL STANDARD**

Where objections to an R&R are filed, the court must conduct a *de novo* review of the
contested portions of the R&R, *see Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989)
(citing 28 U.S.C. §636(b)(1)(C)), provided the objections are both timely and specific.  *Goney v.
Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984).  In conducting its *de novo* review, a court may accept,
reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate
judge.  28 U.S.C. §636(b)(1).  Although the review is *de novo*, the statute permits the court to
rely on the recommendations of the magistrate judge to the extent it deems proper.  *United States
v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standards
for reviewing state court judgments raised in federal *habeas corpus* petitions filed under 28
U.S.C. § 2254.  *Werts v. Vaughn*, 228 F.3d 178, 195 (3d Cir. 2000).  AEDPA increased the
deference federal courts must give to the factual findings and legal determinations of the state
courts.  *Id*. at 196.  Thus, in accordance with § 2254(d), a *habeas corpus* petition may only be
granted if the state court's adjudication of the claim:  "(1) resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In order to seek federal *habeas* relief, however, a petitioner must first exhaust the remedies available in state court. *See* 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State . . ."). To meet this exhaustion requirement, a petitioner must "fairly present his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). In order for a claim to be exhausted, "'[b]oth the legal theory and facts underpinning the federal claim must have been presented to the state courts, and the same method of legal analysis must be available to the state court as will be employed in the federal court.'" *Tome v. Stickman*, 167 F. App'x 320, 322-23 (3d Cir. 2006) (quoting *Evans v. Court of Common Pleas, De. County, Pa.*, 959 F.2d 1227, 1231 (3d Cir. 1992)). A state prisoner must "fairly present" his federal claims to the state courts before seeking federal *habeas* relief by invoking "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Pennsylvania, one complete round includes presenting the federal claim through the Superior Court on direct or collateral review. *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004). The *habeas* petitioner bears the burden of proving exhaustion of all state remedies. *Boyd v. Waymart*, 579 F.3d 330, 367 (3d Cir. 2009).

If a state court has refused or would refuse to review a claim based on a state procedural rule that is independent of the federal question and adequate to support the judgment, the court may deny that claim as procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 729, 731-32 (1991); *Lark v. Sec't Pa. Dept. of Corrections*, 645 F.3d 596, 611 (3d Cir. 2011); *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). A federal court may consider the merits of a procedurally defaulted claim only if "the petitioner establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default." *Holloway v. Horn*, 355 F.3d 707, 715 n.3 (3d Cir. 2004) (quoting *Coleman*, 501 U.S. at 750).

To show "cause," the petitioner "must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements." *Id.*; *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986). Examples of suitable "cause" include a showing that: (1) the factual or legal basis for a claim was not reasonably available; (2) some interference by state officials made compliance with the state procedural rule impracticable; or (3) the procedural default was the result of ineffective assistance of counsel. *Id.* at 488. To demonstrate "prejudice," a petitioner must show "'not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

In *Coleman*, 501 U.S. 722, the United States Supreme Court held that ineffective assistance of state post-conviction counsel cannot satisfy the "cause" requisite for overcoming a procedural default because there is no federal constitutional right to counsel on post-conviction review. *Id.* at 750-54. However, in *Martinez v. Ryan*, 566 U.S. 1 (2012), the Supreme Court carved out a "narrow" and "limited" exception to the rule in *Coleman*, and held that where state

law requires claims of ineffective assistance of trial counsel to be raised for the first time in a collateral proceeding, a federal *habeas* petitioner may be able to establish "cause" sufficient to overcome a procedural default of a "substantial" claim of trial counsel's ineffectiveness if the collateral appeal counsel was also ineffective. *Martinez*, 566 U.S. at 7-19.

In *Martinez*, the Supreme Court held that counsel's failure on collateral review to raise a claim of ineffective assistance of trial counsel may constitute "cause" to excuse a procedural default of the trial counsel ineffectiveness claim if: (1) collateral review counsel's failure itself met the standard for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984); and (2) the underlying ineffective assistance of trial counsel claim is a "substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 566 U.S. at 14. Noting that the *Martinez* Court compared this standard to that required to issue certificates of appealability, the United States Court of Appeals for the Third Circuit interpreted the requisite inquiry as a "threshold inquiry" that "'does not require full consideration of the factual or legal bases adduced in support of the claims.'" *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 238 (3d Cir. 2017) (quoting *Miller El v. Cockerell*, 537 U.S. 322, 327, 336 (2003)).

## DISCUSSION

Petitioner's objections to the R&R are centered on the alleged violations to his Fourth Amendment, insufficiency of the evidence, and speedy trial rights. Specifically, Petitioner argues that the Magistrate Judge erroneous concluded that: (1) Petitioner received a full and fair opportunity to litigate his Fourth Amendment claim in state court; (2) Petitioner's house arrest time records do not call into question the sufficiency of the trial evidence to support Petitioner's

conviction; and (3) Petitioner's speedy trial claims were procedurally defaulted and/or without merit.

At the outset, this Court acknowledges that the Magistrate Judge issued a thoroughly well-reasoned twenty-nine page R&R that addressed each of Petitioner's claims; and that the Magistrate Judge properly concluded that Petitioner's claims were not cognizable, procedurally defaulted, and/or lacked merit. After a close review of the record, this Court finds that Petitioner's objections essentially reiterate the same arguments presented to, and which were thoroughly considered and rejected by, the Magistrate Judge. Notwithstanding, this Court will address each objection.

### *Objection One - Motion to Suppress*[1]

At claim one of the *habeas* petition, Petitioner argues that the trial court improperly denied his motion to suppress the victim's pill bottle found on Petitioner's person during a search conducted by the police on the night of the shooting. In recommending the denial of this claim, the Magistrate Judge found that this Fourth Amendment claim was not cognizable on *habeas* review because Petitioner had a full and fair opportunity to litigate this issue on the merits in state court. This Court agrees.

The Fourth Amendment provides in relevant part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *U.S. Const.* amend. IV. The exclusionary rule, which prohibits the introduction at a criminal trial of evidence obtained in violation of a person's Fourth Amendment rights, is a judicially created means of effectuating the rights secured by the Fourth Amendment.

---

[1] For ease of reference, this Memorandum Opinion refers to Petitioner's objections in the order in which they appear in his objections. Petitioner asserts only three objections relating to Petitioner's five *habeas* claims.

*Pennsylvania Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 359 (1998); *Stone v. Powell*, 428 U.S. 465, 482 (1976). As noted, Petitioner, relying on the exclusionary rule, moved to suppress the victim's pill bottle recovered during the search of his person. (R&R at 10). The trial court denied the motion, and concluded that Petitioner's Fourth Amendment rights were not violated because the police had reasonable suspicion to stop and search Petitioner. (*Id.*).

In concluding that Petitioner's Fourth Amendment claim is not cognizable, the Magistrate Judge considered the holding in *Stone v. Powell*, in which the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal *habeas corpus* relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 482.[2] Notwithstanding, Petitioner objects and contends that the trial court's decision was not in accordance with established Supreme Court precedent and, therefore, he did not receive a "full and fair" hearing on this issue. Petitioner relies on language in *Gilmore v. Marks*, 799 F.2d 51 (3d Cir. 1986), to support his contention that a state court's failure to provide a "full and fair" hearing on a Fourth Amendment claim can overcome *Stone*'s prohibition on granting *habeas* relief on the grounds that evidence was not suppressed. Petitioner is, however, misguided.

In *Gilmore*, the petitioner sought to suppress a statement made to the police as the result of an alleged illegal arrest. *Gilmore v. Marks*, 799 F.2d 51, 54 (3d Cir. 1986). The state court, in

---

[2]       In *Stone*, the Supreme Court considered the basis of the exclusionary rule, which it characterized as a "judicially created means of effectuating the rights secured by the Fourth Amendment" and balanced its deterrent value against the risk of excluding trustworthy evidence. *Stone*, 428 U.S. at 482, 490. The Supreme Court concluded that in the context of federal *habeas* review, the benefits of the deterrent value were outweighed by the exclusionary rule's costs. *Id.* at 494. Thus, so long as the state court has given a petitioner a full and fair opportunity to litigate the Fourth Amendment claim, the petitioner may not obtain federal *habeas* relief on the basis that the exclusionary rule was not applied. *Id.*

considering the Fourth Amendment claim, concluded that any violation committed was harmless error and declined to suppress the petitioner's statement. *Id.* at 53-54. On federal *habeas* review, the district court concluded that *Stone* only prohibited it from considering whether a Fourth Amendment violation had occurred if the state court previously concluded that one had not. *Id.* at 54. The district court went on to conclude that where, as in *Gilmore*, the state court found a Fourth Amendment violation, albeit one that caused only harmless error, *Stone* does not prohibit the district court from reviewing the determination that the violation was harmless error. *Id.* Based on this interpretation of Stone, the district court considered the Fourth Amendment violation and concluded that the error was not harmless, and granted the petitioner habeas relief. *Id.* Thereafter, the Commonwealth appealed on the grounds that the *Stone* decision precluded the district court from considering the Fourth Amendment claim. *Id.* The United States Court of Apeals for the Third Circuit agreed, overturned the district court's decision, and held that *Stone* precludes federal *habeas* review of Fourth Amendment claims where the state court finds the evidence was not unconstitutionally seized and/or where it finds the introduction of the evidence was harmless. *Id.* at 56-57. The Third Circuit specifically noted that even "an erroneous determination of a [*habeas*] petitioner's Fourth Amendment claim [by the state court] does not overcome the *Stone v. Powell* bar." *Id.* at 57; *see also U. S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978) ("[*Stone*] is an insurmountable obstacle to habeas corpus relief, since the Pennsylvania courts have afforded a full and fair opportunity to litigate the question of the fourth amendment violation. Their decision, even if erroneous, is now beyond Article III review.").

In addition, relevant to Petitioner's objection, the *Gilmore* Court went on to state:

> We do not foreclose the possibility that a state failure to give at least colorable application of the correct Fourth Amendment constitutional standard may indicate that there has been no

> opportunity for full and fair consideration, thereby precluding
> application of *Stone v. Powell.*  That is not the issue here.

*Gilmore*, 799 F.2d at 57 (internal citations omitted).  Petitioner relies on this language, arguing

that the trial court's alleged failure to properly apply the correct Fourth Amendment

constitutional standard when considering his motion to suppress establishes that Petitioner did

receive full and fair consideration of his Fourth Amendment claim and, thus, Petitioner is entitled

to have this claim considered on federal habeas review, notwithstanding *Stone*.  Petitioner is

mistaken.

Subsequent to the *Gilmore* decision, the Third Circuit has never held that a Fourth

Amendment claim can be considered on federal *habeas* review based on the state court's alleged

failure to properly apply Supreme Court precedent.  Instead, the Third Circuit has stated that an

exception to *Stone*'s bar on considering Fourth Amendment claims on *habeas* review may exist

where there were structural defects in the state court process that prevented a petitioner's Fourth

Amendment claim from being heard.  *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002); *see

also Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980) ("where the state provides the process but

in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in

that process, (federal [*habeas*] relief) may still be warranted.").  Thus, an exception to *Stone*

exists only if a petitioner was prevented from presenting his or her Fourth Amendment claim to

the state court.  That is not Petitioner's case.

Here, Petitioner has not alleged that there were structural defects that prevented him from

having his Fourth Amendment claim heard in state court.  To the contrary, Petitioner received a

full and fair opportunity to litigate his Fourth Amendment claim.  He filed a pretrial motion to

suppress the pill bottle found during the search and argued that the police officer did not have

reasonable suspicion to stop and search him.  The trial court disagreed and denied the motion

based on the reasoning that (1) the police properly stopped and searched Petitioner based on the anonymous tip received by the police; (2) the proximity in time between the tip and the shooting; (3) the police radio calls stating that two males were in the same area; and (4) Petitioner's behavior. (R&R at 10). While Petitioner may disagree with the trial judge's decision, it is undeniable that Petitioner received a full and fair opportunity to litigate his Fourth Amendment claim. Accordingly, Petitioner's objection that the Magistrate Judge erroneously concluded that Petitioner's Fourth Amendment claim is not reviewable on federal *habeas* review is overruled.

### *Objection Two – Sufficiency of the Evidence*

At claims two and three of the *habeas* petition, Petitioner argues that the physical and testimonial evidence presented at trial was insufficient to convict him of any offense; and that trial counsel was ineffective for failing to object to the trial judge's improper reliance on the "demeanor" of a prosecution witness to establish proof beyond a reasonable doubt. In his brief, Petitioner argues at length the alleged inadequacies of the trial evidence, including, *inter alia*: (1) the credibility of the prosecution's witnesses; (2) the lack of corroborating physical evidence; and (3) the time records of the ankle monitoring Petitioner was subject to as a condition of his house arrest. [ECF 28 at 14-36]. In the R&R, the Magistrate Judge found that Petitioner's insufficiency of the evidence claims were not cognizable, procedurally defaulted, and/or without merit. Petitioner appears to only object to the Magistrate Judge's conclusion regarding the ankle monitoring records. [ECF 28 at 36-38]. Upon review, this Court finds the objection lacks merit.

The Fourteenth Amendment "prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979). In *Jackson*, the Supreme Court noted that a federal district court must "determine whether the

record evidence could reasonably support a finding of guilt beyond a reasonable doubt."  *Id.* at

318.  The *Jackson* Court noted, however, that

> this inquiry does not require a court to ask itself whether *it* believes
> that the evidence at the trial established guilt beyond a reasonable
> doubt.  Instead, the relevant question is whether, after viewing the
> evidence in the light most favorable to the prosecution, *any*
> rational trier of fact could have found the essential elements of the
> crime beyond a reasonable doubt.

*Id.* at 318-19 (internal quotations and citations omitted) (emphasis in original).  In considering a

*Jackson* claim on *habeas* review a district court must apply "a doubly deferential inquiry under

Supreme Court Due Process precedent as well as [AEDPA]."  *Wright v. Superintendent*

*Graterford SCI*, 2018 WL 2193132, at *2 (3d Cir. May 14, 2018).  The "first layer of deference

[is] owe[d] to the [factfinder] under *Jackson*," and the second layer is established by AEDPA,

which prohibits a district court from granting *habeas* relief unless the state court's adjudication

of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States; or (2) resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding."  *See* 28 U.S.C. §

2254(d); *Eley v. Erickson*, 712 F.3d 837, 853 (3d Cir. 2013).

Petitioner contends that he was under house arrest on the night of the shooting and was

wearing an ankle monitor that would trigger an alert if he went more than forty feet from his

house.  [ECF 28 at 25].  The shooting occurred approximately 164 feet from Petitioner's house.

(*Id.*).  Petitioner argues that the ankle monitoring evidence provides support to his contention

that, prior to the gun shooting, he was sitting on his front porch in compliance with his house

arrest requirements.  (*Id.* at 24-25).  In addition, Petitioner argues that at trial, one of the police

officers who responded to the shooting, testified that he believed that he received the police radio

broadcast of the shooting at 10:25 p.m. (*Id.* at 25). The evidence shows that Petitioner's ankle monitor did not trigger an alert until 10:25 p.m. (*Id.*). In light of this timeline, Petitioner argues that for the call to the police to have been made and subsequently broadcast to the responding officers at 10:25 p.m., the shooting must have occurred prior to 10:25 p.m. (*Id.* at 25-26). Petitioner then reasons that he could not have been the shooter because he did not leave his home until after the shooting occurred. (*Id.*).

Petitioner raised this argument in his motion for extraordinary relief after his conviction. The trial court denied the motion, and Petitioner appealed. The Superior Court noted that, while the electronic monitoring system was found to be accurate, the precise time the police received the radio broadcast was unknown, because the police did not testify as to the accuracy of their clocks or time approximations when they testified that the radio broadcast occurred at 10:25 p.m. (R&R at 18). The Superior Court concluded that because the exact timing of the police call and radio broadcast were unknown, and because the distance between the shooting and the location the ankle monitor would alert was only 124 feet, there was sufficient evidence to show that Petitioner was at the scene of the crime when the victim was shot. (*Id.*).

The Magistrate Judge concluded that the Superior Court's decision was not contrary to *Jackson*, nor based on an unreasonable determination of the facts. (*Id.* at 18-19). Petitioner, in his objections, does not specifically address this conclusion. Instead, he simply asserts that the Magistrate Judge "strain[ed] to find a way around the obvious discrepancy between the timing of the 911 call and the time when Petitioner's ankle monitor signaled a violation." [ECF 28 at 36]. This Court disagrees, and further finds that the Magistrate Judge properly concluded that the Superior Court's ruling that the lack of precision in the police officer's time estimate meant that Petitioner could not show that the ankle monitor alert occurred after the shooting was not an

unreasonable determination of the facts.  ((R&R at 19).    Accordingly, Petitioner's objection is overruled.[3]

### *Objection Three – Speedy Trial Violation*

At claims four and five of the *habeas* petition, Petitioner argues that his constitutional right to a speedy trial was violated and that trial counsel was ineffective for failing to assert that Petitioner's speedy trial right was violated.  In recommending the denial of these claims, the Magistrate Judge found that the claims were procedurally defaulted and/or meritless.  In his objections, Petitioner argues that the Magistrate Judge improperly attributed the long delay before trial to Petitioner and, in the absence of such attribution, his claims would not be procedurally defaulted and would have merit.

The Sixth Amendment of the United States Constitution provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."  U.S. Const. amend. VI.  "The speedy-trial right is 'amorphous,' 'slippery,' and 'necessarily relative.'" *Vermont v. Brillon*, 556 U.S. 81, 89 (2009) (quoting *Barker v. Wingo*, 407 U.S. 514, 522 (1972)). In order to determine if a particular defendant has been deprived of his or her speedy trial right, a court must apply a balancing test.  *Barker*, 407 U.S. at 530.  Factors to consider in this balance include the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."  *Id.*  In addressing these factors, the *Barker* Court noted:

> The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.

---

[3]     Petitioner did not object to the Magistrate Judge's conclusion that Petitioner's sufficiency of the evidence claim based on witness credibility was not cognizable on *habeas* review, (R&R at 19), or that his "demeanor" objection was procedurally defaulted.  (R&R at 21-22).  Upon a review of the record, this Court concludes that these findings are correct, and adopts them.

. . .

Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

. . .

Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

. . .

Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Barker*, 407 U.S. at 530-32.  While the "primary burden [is] on the courts and the prosecutors to

assure that cases are brought to trial . . . if delay is attributable to the defendant, then his waiver

may be given effect under standard waiver doctrine . . . ." *Id.* at 529. Further, "[b]ecause the attorney is the [defendant's] agent when acting, or failing to act, in furtherance of the litigation, delay caused by the defendant's counsel is also charged against the defendant." *Brillon*, 56 U.S. at 90-91 (internal quotations omitted).

In addition to his speedy trial claim, Petitioner also asserts a related claim for ineffective assistance of counsel premised on the failure of his trial counsel to raise a speedy trial claim in state court. When addressing an ineffective assistance of counsel claim, courts must apply the two-pronged inquiry articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To sustain a claim for ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively deficient and that this deficient performance prejudiced the defense. *Id.* at 687. To satisfy the first prong, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In evaluating counsel's performance, a reviewing court should be "highly deferential" and must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* The court must defer to counsel's tactical decisions, avoiding "the distorting effects of hindsight," and give counsel the benefit of a strong presumption of reasonableness. *Strickland*, 466 U.S. at 689; *Gov't of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1431 (3d Cir. 1996).

Prejudice has been defined as a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*; *see also Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992). To meet this second prong, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.* It follows that counsel cannot be ineffective for failing to pursue meritless claims or objections. *See United States v. Sanders*, 165 F.3d 248, 253 (3d Cir. 1999).

When addressing an ineffective assistance of counsel claim on federal *habeas* review where, as in this case, the petitioner's claim was raised in state court and where the state court considered, and rejected, the claim, a district court considers only whether the state court's determination as an unreasonable application of Strickland. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 101, 105 (2011) ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court."). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is . . . difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. at 105 (internal quotations and citations omitted.).

Petitioner asserts the following the facts relevant to his speedy trial violation claims:

He was arrested on July 15, 1998, and his trial did not commence until five and one half years later, on December 10, 2003. [ECF 28 at 38]. During this entire period, Petitioner was in custody. (*Id.*). Petitioner contends that during this time, he was never brought before the trial judge and never waived his constitutional

right to a speedy trial. (*Id.* at 38-39). Petitioner notes that numerous continuances were requested and, with the exception of a few instances, all of the continuances and resultant delays were at the behest of Petitioner's counsel, to accommodate counsel's trial schedule. (*Id.* at 39). Petitioner also asserts that the trial court did not attach Petitioner's counsel for trial, and the prosecutor never demanded that Petitioner's counsel be attached for trial. (*Id.* at 39, 42). Petitioner complained about the delay to his trial counsel, in writing, and informed his counsel that he wanted to proceed to trial and that his speedy trial right was being violated. (*Id.* at 39). His counsel never responded. (*Id.*). Petitioner also wrote to the trial court, asking that his case be tried.

In light of these facts, Petitioner argues that the four *Barker* factors support that his speedy trial right was violated, and that his counsel was ineffective for failing to assert that Petitioner's speedy trial right was being violated. (*Id.* at 40-46).

Notably, Petitioner did not move to dismiss his criminal case based on the violation of his speedy trial right, nor did he raise this claim on direct appeal following his conviction. *Commonwealth v. Carson*, 2014 WL 10888317, at *4 (Pa. Super. Ct. Aug. 27, 2014). Petitioner blames trial counsel for failing to preserve the speedy trial issue on appeal, the Pennsylvania procedural rule that prohibits ineffective assistance of counsel claims on direct appeal, and the Pennsylvania prohibition on a court to address legal issues raised *pro se* by a defendant who is represented by counsel. [ECF 28 at 47-48].

Petitioner did, however, assert these claims in his PCRA petition, which was denied. At the time, the Superior Court concluded that Petitioner's speedy trial claim was not cognizable on PCRA review because it was not raised on direct appeal. *Commonwealth v. Carson*, 2014 WL 10888317, at *4 (Pa. Super. Ct. Aug. 27, 2014). Regarding the related, but separate, ineffective assistance of counsel claim, the Superior Court denied this claim because Petitioner conceded he could not show actual prejudice from counsel's actions and delay, and relied only on "presumptive prejudice," which is insufficient to establish the "actual" prejudice needed to establish an ineffective assistance of counsel claim. *Id.* at *4-5.

The Magistrate Judge concluded that Petitioner's speedy trial claim was procedurally defaulted because he did not raise it at the trial level or on direct appeal, and could no longer raise it in state court. (R&R at 25). The Magistrate Judge also considered the Superior Court's determination that because Petitioner had suffered only a "presumptive prejudice," and not an "actual prejudice," Petitioner's trial counsel had not rendered ineffective assistance under Pennsylvania state law. (*Id.*). The Magistrate Judge concluded that the Superior Court's denial of Petitioner's ineffective assistance claim was a reasonable determination of the facts and a reasonable application of established Supreme Court law.[4] (*Id.*). The Magistrate Judge also discussed the PCRA Court's consideration of the underlying merits of Petitioner's speedy trial claim, in which the PCRA Court concluded that while the more than five-year delay of trial "was presumptively prejudicial so as to compel assessment of the other factors in the [*Barker*] test," ultimately the majority of the delay was due to continuances sought by Petitioner's counsel and, thus, attributable to Petitioner. (*Id.* at 27-28). The PCRA Court also found that Petitioner acquiesced to the requested continuances in that he hired trial counsel to represent him, and continued to retain him throughout the trial process, including the post-trial proceedings. (*Id.* at 28). The PCRA Court also found that Petitioner never sought to assert a speedy trial right violation via a *pro se* motion despite filing numerous *pro se* motions on other issues, and that

---

[4]      The Superior Court, in considering whether Petitioner's counsel had rendered ineffective assistance, applied the standard for ineffective assistance of counsel articulated by the Pennsylvania Supreme Court in *Commonwealth v. Pierce*, 527 A.2d 973 (Pa.1987). *Commonwealth v. Carson*, 2014 WL 10888317, at *4 (Pa. Super. Ct. Aug. 27, 2014). Under *Pierce*, to overcome the presumption of counsel's effectiveness, a petitioner must establish "(1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) [the defendant] was prejudiced by counsel's act or omission." *Id.* The Third Circuit Court of Appeals has held that the standard set forth in *Pierce* does not "contradict[] the Supreme Court's holding in *Strickland*." *Werts v. Vaughn*, 228 F.3d 178, 204 (3d Cir. 2000). "Accordingly, application of *Pierce* and its progeny will not result in a decision that is 'contrary to, or involving an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States.'" *Santiago v. Collins*, 2014 WL 656778, at *8 (E.D. Pa. Feb. 20, 2014) (citing 28 U.S.C. § 2254(d)(1)).

Petitioner did not directly assert his speedy trial right to the trial court in any of his communications to the trial court. (*Id.* at 28). Finally, the PCRA Court noted that Petitioner admitted that he could not establish prejudice. (*Id.*). Accordingly, the PRCA court, applying the *Barker* factors, concluded that Petitioner's speedy trial right was not violated. (*Id.*). The Magistrate Judge concluded that the PCRA Court's determination was not an unreasonable determination of the facts presented during the evidentiary hearing and was not contrary to, or an unreasonable application of *Barker*. (*Id.* at 29).

In his objections, Petitioner spends several pages arguing that the Superior Court was incorrect in finding that he procedurally defaulted his speedy trial claim by failing to raise it at trial or direct appeal and in concluding that Petitioner was not prejudiced by his trial counsel's failure to assert such claim. [ECF 28 at 46-50]. However, Petitioner appears to only object to the Magistrate Judge attributing the five-year delay to Petitioner despite Petitioner's repeated requests to his counsel and his request to the trial court to proceed, and to the Magistrate Judge overlooking the "obvious collusion" between the trial court, prosecutor, and defense counsel. (*Id.* at 50-52). Petitioner ultimately argues that a defendant's speedy trial right can be violated where the court, prosecutor, and defense counsel seek to ignore the defendant's attempts to assert the right. (*Id.*).

This Court finds this argument unavailing. In *Vermont v. Brillon*, 556 U.S. 81 (2009), the Supreme Court held that the Vermont Supreme Court, which concluded that the defendant's speedy trial right had been violated and held that the charges against the defendant must, therefore be dismissed, "erred in attributing to the State delays caused by the failure of several assigned [defense] counsel . . . to move his case forward." *Brillon*, 556 U.S. at 91. The *Brillon* Court noted that a defendant's "counsel's failure 'to move the case forward' does not warrant

attribution of delay to the State," and that any delay caused by defense counsel must be attributed to the defendant. *Id.* at 92-93. Nothing in the record suggests that Petitioner sought to obtain new counsel, or to proceed *pro se*, in order to assert his speedy trial right. Thus, the delay caused by Petitioner's counsel is attributable to Petitioner. Though Petitioner argues collusion of the parties involved, Petitioner does not cite to any evidence that the court, prosecutor, and counsel did in fact collude to violate Petitioner's speedy trial right.

Having reviewed the record and arguments raised by Petitioner, this Court agrees with the Magistrate Judge that the state court's analysis was not an unreasonable determination of the facts presented and was not contrary to, or an unreasonable application of *Barker* or *Strickland*. As such, Petitioner's underlying speedy trial claim lacks merit and, therefore, Petitioner cannot establish prejudice to assert a successful ineffective assistance of counsel claim related to his speedy trial right. *Strickland*, 466 U.S. at 687. Accordingly, this objection is overruled.

### *Certificate of Appealability*

Procedurally, at the time of a final order denying a petition under 28 U.S.C. § 2254, the court must determine whether to issue a certificate of appealability. A certificate of appealability should issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this burden, the petitioner must show "that a reasonable jurist would find the district court's assessment of the constitutional claims to be debatable or wrong." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). This Court finds that, based on the analysis above, reasonable jurists would not disagree with this Court's assessment of Petitioner's claims. Accordingly, this Court declines to issue a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**CONCLUSION**

For the reasons stated herein, Petitioner's objections to the Report and Recommendation are overruled. Consequently, the Report and Recommendation is approved and adopted, and Petitioner's petition for a writ of *habeas corpus* is denied. Because reasonable jurists would not debate this Court's disposition of Petitioner's claims, a certificate of appealability is denied. An Order consistent with this Memorandum Opinion follows.


NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.